UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CORY JAMES WHITE,<br><br>    Plaintiff,<br><br>  vs.<br><br>KRANTZ, et al.,<br><br>    Defendants. | 1:20-cv-00892-NONE-GSA-PC<br><br>**<u>SCREENING ORDER</u>**<br><br>**ORDER DISMISSING COMPLAINT FOR FAILURE TO STATE A CLAIM, WITH LEAVE TO AMEND**<br><br>**(ECF No. 1.)**<br><br>**THIRTY DAYS TO FILE FIRST AMENDED COMPLAINT** |

**I.    BACKGROUND**

    Cory James White ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff filed the Complaint commencing this action on June 29, 2020.  (ECF No. 1.)  The Complaint is now before the court for screening.  28 U.S.C. § 1915.

**II.    SCREENING REQUIREMENT**

    The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The

Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). To state a viable claim, Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). While factual allegations are accepted as true, legal conclusions are not. Id. The mere possibility of misconduct falls short of meeting this plausibility standard. Id.

### III. SUMMARY OF COMPLAINT

Plaintiff is presently incarcerated at California State Prison-Los Angeles County in Lancaster, California. The events at issue in the Complaint allegedly occurred at Kern Valley State Prison (KVSP) in Delano, California, when Plaintiff was incarcerated there in the custody of the California Department of Corrections and Rehabilitation (CDCR). Plaintiff names as defendants Ron Kranz (Chaplain), Maurice Howard (Chaplain), Randy Lindsey (Community Resource Manager), and Paul Gonzales (Community Resource Manager) (collectively, "Defendants").

A summary of Plaintiff's allegations follows:

Plaintiff is Jewish by heritage, ethnic descent, and religious affiliation. On May 31, 2018,

Plaintiff was transferred to KVSP where upon arrival (from June 1, 2018 through July 16, 2018) he was denied Kashrut, known commonly as Kosher meals and KDP within the CDCR. Plaintiff had been preapproved to receive the KDP meals from the transferring institution. On June 1, 2018, when he was denied a Kosher meal, Plaintiff commenced a hunger strike. Due to his indigence and hunger Plaintiff was compelled to begin eating the general population meals which are "Treif" (torn – not Kosher), thus placing Plaintiff in a state of uncleanliness. (ECF No. 1 at 5:14.) Plaintiff was denied KDP meals for about fifty days.

**Claim #1**. Plaintiff submitted a CDCR 22 Request for Interview form on June 11, 2018, to defendant Ron Kranz. Defendant Kranz deliberately waited until July 16, 2018 to provide the interview.

**Claim #2**. On September 19, 2018, Jews observed the holiday of Yom Kippur. Jewish holy days begin the evening prior to the actual day of observance. As per CDCR policy, Plaintiff submitted a CDCR 22 form requesting a sack lunch. Yom Kippur is a day of fasting in Judaism. Due to a policy instituted by defendant Ron Kranz, which denied Plaintiff's right under DOM § 54080.14, Plaintiff was required to maintain a fast on meals from the previous day, going without a meal for over twenty-four hours. This was cruel and unusual punishment without any legitimate penological purpose. Plaintiff submitted a CDCR 602 appeal on the issue but it was screened out.

**Claim #3**. On December 18, 2018, Plaintiff submitted a CDCR 602 form grieving the denial of a sack lunch for a fasting day, per policy. Plaintiff was interviewed by defendant Maurice Howard for an appeal and defendant Howard attempted to qualify that the sun had set at an appropriate time for Plaintiff to break his fast. Plaintiff did without three meals prior to the time to break his fast.

**Claim #4**. The fast of Esther (Purim) took place on March 20, 2020, and Jews are required to fast the day before. Plaintiff submitted a CDCR 22 form requesting a sack lunch.

On April 10, 2019, Plaintiff was interviewed for his 602 appeal by defendant Maurice Howard who stated in the first level review that Plaintiff needed to fill out a CDCR Form 3030 to request a religious meal. Plaintiff disagrees and states that a CDCR Form 3030 is used to

request a special diet, and that DOM § 54080.14 states that one must submit a CDCR 22 form to request a sack lunch for a fasting day. Defendant denied Plaintiff's CDCR 602 at the first level of review allowing Plaintiff's rights to be circumvented. In the second level review, defendant Paul Gonzales stated, "No sack lunch is required for Jewish holy day end of fasting, nor was a request received by the Chaplain." (ECF No. 1 at 10:1-3.) Plaintiff submitted CDCR 22 forms on March 10, 2019, one to Food Service and the other sent to the RRC. Defendant Paul Gonzales chairs the RRC and failed in his assigned duties.

At the third level of review, defendants Maurice Howard and Paul Gonzales deprived Plaintiff of rights under DOM, Title 15, and the constitutions of both state and federal governments, and their actions had no legitimate penological interest.

**Claim #5.** On July 21, 2019, the Jewish fast of Tammuz took place requiring Jews to fast. Per policy, Plaintiff submitted a CDCR 22 form requesting a sack lunch. On July 7, 2019 Plaintiff submitted two CDCR 22 forms, one to defendant P. Gonzales and one to Ron Kranz, RRC. Defendant Gonzales did not respond and so is not named in this particular claim. Defendant Ron Kranz responded on July 12, 2019, misrepresenting Plaintiff's religious beliefs and the meaning behind the fast day.

Plaintiff filed a 602 appeal. At the second level of review, defendant Randy Lindsey denied the 602 appeal stating that defendant Kranz was justified. But defendant Lindsey never dealt with the issue Plaintiff grieved -- that DOM § 54080.14 *did* state that a Jewish prisoner was allowed a sack lunch upon request for a fasting day.

**Claim #6.** On August 11, 2019, the fast of Tish'a B'av occurred, which is a fasting day. Per policy, Plaintiff submitted a CDCR 22 form to request a sack lunch. On July 22, 2019, and August 1, 2019, Plaintiff sent CDCR 22 forms to defendant Ron Kranz. Defendant Kranz failed to respond.

On September 11, 2019, Plaintiff submitted another CDCR 22 form about the continual denial of sack lunches on August 11, 2019, and all the previous fasting days throughout the year.

On October 21, 2019, at the first level of review, defendant Randy Lindsey stated, "Neither policy nor precedence requires that an individual sack lunch be provided to an inmate

who chooses to observe a religious holy day." (ECF No. 1 at 12:21-23.) On December 9, 2019, Plaintiff's appeal was partly granted but failed to ensure adequate remedies. On April 30, 2020, the Office of Appeals decided not to provide a third level review and let the second level review stand finally recognizing that Plaintiff was due a sack lunch for a fasting day per policy.

Plaintiff seeks as relief compensatory damages, special damages in the amount of $250,000.00 for the intentional infliction of emotional and spiritual distress, punitive damages, litigation fees and costs, and appointment of counsel.

## IV.   PLAINTIFF'S CLAIMS

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

"[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006). "To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress." Id.

To state a claim under § 1983, a plaintiff must allege that (1) the defendant acted under color of state law and (2) the defendant deprived him or her of rights secured by the Constitution or federal law. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. Cnty. of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act

which he is legally required to do that causes the deprivation of which complaint is made.'" Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

### A.      Plaintiff's Exhibits

Plaintiff has attached approximately 190 pages of exhibits (Exhibits A-M) to the Complaint, with a table of contents. The exhibits are well organized and Plaintiff refers to them in the Complaint. However, while exhibits are permissible, Fed. R. Civ. P. 10(c), they are not necessary in the federal system of notice pleading, Fed. R. Civ. P. 8(a). The Court strongly suggests to Plaintiff that they should not be submitted where (1) they serve only to confuse the record and burden the Court, or (2) they are intended as future evidence. If this action reaches a juncture at which the submission of evidence is appropriate and necessary (e.g., summary judgment or trial), Plaintiff will have the opportunity at that time to submit his evidence.

The court has reviewed Plaintiff's exhibits to the Complaint for clarification of the events. However, Plaintiff is cautioned that it is not the duty of the court to look through all 190 pages of his exhibits to determine whether or not he has claims cognizable under § 1983. Rather, the court looks to the factual allegations contained in Plaintiff's Complaint to determine whether or not Plaintiff has stated a cognizable claim for relief under § 1983.

### B.      Prison Appeals Process

Most of Plaintiff's allegations against the named Defendants pertain to their review and handling of Plaintiff's 602 inmate appeals. These allegations, without more, do not state a cognizable claim.

The Due Process Clause protects prisoners from being deprived of liberty without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to state a cause of action for deprivation of due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. "States may under certain circumstances create liberty interests which are protected by the Due Process Clause." Sandin v. Conner, 515 U.S. 472, 483-84 (1995). Liberty interests created by state law are generally limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id.

"[I]nmates lack a separate constitutional entitlement to a specific prison grievance procedure." Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing of appeals because no entitlement to a specific grievance procedure), citing Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988). "[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates." Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982) accord Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993); see also Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) (existence of grievance procedure confers no liberty interest on prisoner). "Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the Fourteenth Amendment." Azeez, 568 F. Supp. at 10; Spencer v. Moore, 638 F. Supp. 315, 316 (E.D. Mo. 1986).

Actions in reviewing prisoner's administrative appeal generally cannot serve as the basis for liability in a section 1983 action. Buckley, 997 F.2d at 495. The argument that anyone who knows about a violation of the Constitution, and fails to cure it, has violated the Constitution himself is not correct. "Only persons who cause or participate in the violations are responsible. Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation." Greeno v. Daley, 414 F.3d 645, 656-57 (7th Cir. 2005) accord George v. Smith, 507 F.3d 605, 609-10 (7th Cir. 2007); Reed v. McBride, 178 F.3d 849, 851-52 (7th Cir. 1999); Vance v. Peters, 97 F.3d 987, 992-93 (7th Cir. 1996).; Haney v. Htay, No. 1:16-CV-00310-AWI-SKO-PC, 2017 WL 698318, at *4–5 (E.D. Cal. Feb. 21, 2017).

Thus, Plaintiff's allegations that Defendants failed to properly process Plaintiff's appeals fail to state a cognizable claim.

### C. Free Exercise of Religion – First Amendment Claim

The First Amendment is made applicable to state action by incorporation through the Fourteenth Amendment. Everson v. Bd. of Educ. of Ewing Twp., 330 U.S. 1, 8 (1947). In order to establish a free exercise violation, a prisoner must show that a defendant substantially burdened the practice of his religion without any justification reasonably related to legitimate penological interests. See Shakur v. Schriro, 514 F.3d 878, 883-84 (9th Cir. 2008); see, e.g., Bolds v. Cavazos, No. 14-15176, 599 Fed. Appx. 307 (9th Cir. March 20, 2015) (unpublished memorandum disposition) (dismissing Free Exercise Clause claim because inmate failed to show that confiscation of television "substantially burdened" the practice of religion). "A substantial burden . . . place[s] more than an inconvenience on religious exercise; it must have a tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an adherent to modify his behavior and to violate his beliefs." Jones v. Williams, 791 F.3d 1023, 1031-32 (9th Cir. 2015). *De minimis* or minor-burdens on the free exercise of religion are not of a constitutional dimension, even if the belief upon which the exercise is based is sincerely held and rooted in religious belief. See e.g., Rapier v. Harris, 172 F.3d 999, 1006 n. 4 (7th Cir. 1999) (the unavailability of a non-pork tray for inmate at 3 meals out of 810 does not constitute more than a *de minimis* burden on inmate's free exercise of religion).

The "sincerity test," and not the centrality test, applies to prisoners' free-exercise claims. Penwell v. Holtgeerts, 386 F. App'x 665, 667 (9th Cir. 2010) (citing see Shakur, 514 F.3d at 884–85). Under the sincerity test, a prisoner's religious concern implicates the free exercise clause if it is (1) "sincerely held" and (2) "rooted in religious belief," rather than in secular philosophical concerns. Id. (citing Malik v. Brown, 16 F.3d 330, 333 (9th Cir. 1994) (quotations omitted); see also Shakur, 514 F.3d at 885 (adopting Malik's formulation of the sincerity test)).

A prison regulation that impinges on an inmate's First Amendment rights is valid if it is reasonably related to legitimate penological interests. See O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987) (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)). Allegations of a denial of

an opportunity to practice religion "must be found reasonable in light of four factors: (1) whether there is a 'valid, rational connection' between the regulation and a legitimate government interest put forward to justify it; (2) 'whether there are alternative means of exercising the right that remain open to prison inmates'; (3) whether accommodation of the asserted constitutional right would have a significant impact on guards and other inmates; and (4) whether ready alternatives are absent (bearing on the reasonableness of the regulation)." Pierce v. County of Orange, 526 F.3d 1190, 1209 (9th Cir. 2008) (citing Turner, 482 U.S. at 89-90); see Beard v. Banks, 548 U.S. 521, 532-33 (2006) (noting that application of the Turner factors does not turn on balancing the factors, but on determining whether the defendants show a reasonable relation, as opposed to merely a logical relation).

Here, Plaintiff has established that he is Jewish by heritage, ethnic descent, and religious affiliation. Plaintiff first alleges that he was denied Kosher meals for approximately 50 days, after he arrived at KVSP, from June 1, 2018 until July 16, 2018. Plaintiff alleges that he had been preapproved by his transferring institution to receive Kosher meals and when his request for Kosher meals was denied at KVSP, he went on a hunger strike. However, because of his hunger and indigence, he was compelled to begin eating the general population meals which are Treif (torn – not Kosher), thus placing Plaintiff in a state of uncleanliness.

Plaintiff may be able to state a free exercise claim for the denial of a Kosher diet. However, Plaintiff must first name the individual defendant(s) who denied him a Kosher diet, explain what exactly that particular individual defendant did, or did not do, regarding the requested Kosher diet, and why Plaintiff was denied a Kosher diet. These allegations should include what happened when he arrived at KVSP and requested a Kosher diet, not what was decided later based on the 602 appeals he filed. More specificity is required here.

Next, Plaintiff alleges that on numerous occasions, in violation of DOM § 54080.14, he was denied sack lunches to eat before or after a religious fast, and the lack of a sack lunch caused him to miss more than 24-hours-worth of meals during each fast. Plaintiff cannot state a claim concerning the denial of sack lunches until he names as defendants the individuals who denied him the sack lunches. Plaintiff must set for detailed facts supporting each incident, and detail

what each defendant did or did not do. Further, Plaintiff must allege facts showing what alternatives he had, other than obtaining sack lunches, to avoid missing 24 hours of meals during religious fasts, and what alternatives he was provided, if any, to practice his religion in general. Plaintiff should address whether he was able to participate in religious services, group prayer, discussion, and holidays, even though he was denied sack meals. Without more factual allegations the court cannot determine whether Plaintiff states a cognizable claim for the denial of his requests for sack meals.

Plaintiff shall be granted leave to amend his Free Exercise claim to address the deficiencies in this claim found by the court.

### D.     **RLUIPA – Right to Practice Religion**

The Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") provides:

> No government shall impose a substantial burden on the religious exercise[1] of a person residing in or confined to an institution . . ., even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person:
>
> (1)    is in furtherance of a compelling government interest; and
>
> (2)    is the least restrictive means of furthering that compelling government interest.

42 U.S.C. § 2000cc-1.

"RLUIPA is to be construed broadly in favor of protecting an inmate's right to exercise his religious beliefs." Warsoldier v. Woodford, 418 F.3d 989, 995 (9th Cir. 2005). "RLUIPA disallows policies that impose 'a substantial burden on . . . religious exercise' unless the burden 'furthers "a compelling governmental interest," and does so by "the least restrictive means."'" Alvarez v. Hill, 518 F.3d 1152 (9th Cir. 2008) (quoting id. at 994 quoting 42 U.S.C. § 2000cc–1(a)). A "substantial burden" is one that imposes a significantly great restriction or onus on

---

[1] "Congress defined 'religious exercise' to include 'any exercise of religion, whether or not compelled by, or central to, a system of religious belief.'" Holt v. Hobbs, 135 S.Ct. 853, 860, 190 L.Ed.2d 747 (2015). (quoting § 2000cc-5(7)(A)). In fact, RLUIPA bars inquiry into whether a particular belief or practice is 'central' to a prisoner's religion." Cutter v. Wilkinson, 544 U.S. 709, 725 n.13, 125 S.Ct. 2113, 161 L.Ed. 1020 (2005) (overruling Establishment Clause to RLUIPA).

religious exercise. <u>San Jose Christian College v. City of Morgan Hill</u>, 360 F.3d 1024, 1034–35 (9th Cir. 2004). The Supreme Court has found a substantial burden "where the state denies an important benefit because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs." <u>Warsoldier</u>, 418 F.3d at 995 (quoting <u>Thomas v. Review Bd. of the Ind. Employment Sec. Div.</u>, 450 U.S. 707, 717–18 (1981)). In any RLUIPA claim, one must first identify the "religious exercise" allegedly impinged upon, and then must ask whether the prison regulation at issue "substantially burdens" that religious exercise. <u>Greene v. Solano County Jail</u>, 513 F.3d 982, 987 (9th Cir. 2008). "Courts are expected to apply RLUIPA's standard with due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." <u>Hartmann v. California Dep't of Corr. & Rehab.</u>, 707 F.3d 1114, 1124-25 (9th Cir. 2013) (citing <u>Cutter v. Wilkinson</u>, 544 U.S. 709, 723, 125 S.Ct. 2325 (2003)) (internal quotation marks omitted).

Money damages are not available under RLUIPA against the state or state officials sued in their official capacities, <u>Sossamon v. Texas</u>, 563 U.S. 277, 279, 131 S.Ct. 1651, 1655 (2011), and RLUIPA does not contemplate liability of government employees in their individual capacity. <u>Wood v. Yordy</u>, 753 F.3d 899, 904 (9th Cir. 2014). Thus, a RLUIPA claim may proceed only for declaratory or injunctive relief against defendants acting within their official capacities.

Here, Plaintiff fails to state a claim for violation of RLUIPA. He has not requested declaratory or injunctive relief against any defendant acting in his or her official capacity. Plaintiff has requested as relief monetary damages, which are not available in a RLUIPA claim. Plaintiff shall be granted leave to amend this claim to correct the deficiencies in his RLUIPA claim identified by the court.

      **E.**    **Conditions of Confinement – Eighth Amendment Claim**

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of

confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing Farmer v. Brennan, 511 U.S. 825, 847, 114 S.Ct. 1970 (1994) and Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392 (1981)) (quotation marks omitted). While conditions of confinement may be, and often are, restrictive and harsh, they must not involve the wanton and unnecessary infliction of pain. Morgan, 465 F.3d at 1045 (citing Rhodes, 452 U.S. at 347) (quotation marks omitted). Thus, conditions which are devoid of legitimate penological purpose or contrary to evolving standards of decency that mark the progress of a maturing society violate the Eighth Amendment. Morgan, 465 F.3d at 1045 (quotation marks and citations omitted); Hope v. Pelzer, 536 U.S. 730, 737, 122 S.Ct. 2508 (2002); Rhodes, 452 U.S. at 346. Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety, Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted), but not every injury that a prisoner sustains while in prison represents a constitutional violation, Morgan, 465 F.3d at 1045 (quotation marks omitted).

To maintain an Eighth Amendment claim, a prisoner must show that prison officials were deliberately indifferent to a substantial risk of harm to his health or safety. E.g., Farmer, 511 U.S. at 847; Thomas v. Ponder, 611 F.3d 1144, 1150-51 (9th Cir. 2010); Foster v. Runnels, 554 F.3d 807, 812-14 (9th Cir. 2009); Morgan, 465 F.3d at 1045; Johnson, 217 F.3d at 731; Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998). The deliberate indifference standard involves an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious . . . ." Farmer, 511 U.S. at 834. "[R]outine discomfort inherent in the prison setting" does not rise to the level of a constitutional violation. Johnson, 217 F.3d at 731. Rather, extreme deprivations are required to make out a conditions of confinement claim, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. Farmer, 511 U.S. at 834; Hudson v. McMillian, 503 U.S. 1, 9, 112 S.Ct. 995 (1992). The circumstances, nature, and duration of the deprivations are critical in determining whether the conditions complained of are grave enough to form the basis of a viable Eighth Amendment claim. Johnson, 217 F.3d at 731. Second, the prison official must "know[] of and disregard[] an excessive risk to inmate health or safety . . . ."

Farmer, 511 U.S. at 837.  Thus, a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of harm and disregards that risk by failing to take reasonable measures to abate it.  Id. at 837-45.  Mere negligence on the part of the prison official is not sufficient to establish liability, but rather, the official's conduct must have been wanton.  Id. at 835; Frost, 152 F.3d at 1128.

Adequate food is a basic human need protected by the Eighth Amendment. See Keenan v. Hall, 83 F.3d 1083, 1091 (9th Cir.1996), amended, 135 F.3d 1318 (9th Cir.1998).  The Eighth Amendment requires only that prisoners receive food that is adequate to maintain health.  See LeMaire v. Maass, 12 F.3d 1444, 1456 (9th Cir. 1993).  However, "[s]ome conditions of confinement may establish an Eighth Amendment violation "in combination" when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise -- for example, a low cell temperature at night combined with a failure to issue blankets." Wilson v. Seiter, 501 U.S. 294, 304, 115 L. Ed. 2d 271, 111 S. Ct. 2321 (1991). The circumstances, nature, and duration of a deprivation of these necessities must be considered in determining whether a constitutional violation has occurred. "The more basic the need, the shorter the time it can be withheld." Hoptowit v. Ray, 682 F.2d 1237, 1259 (9th Cir. 1982).

Plaintiff alleges that he was denied a Kosher diet for 50 days, and on other occasions his requests for sack lunches to eat before or after a religious fast were denied.  These acts against Plaintiff, without more, do not rise to the level of an Eighth Amendment violation.

Even though Plaintiff was denied Kosher meals for 50 days, he was able to eat meals served to the general population during that time.  Plaintiff has not described an extreme deprivation from the denial of (seven) sack meals over time.  There are no allegations that Plaintiff lost weight or otherwise physically suffered from an inadequate diet because he was denied sack meals.  Moreover, Plaintiff has not alleged facts showing that any defendant knew about a substantial risk of serious harm to Plaintiff if he were denied Kosher foods or sack lunches and yet acted against him while deliberately ignoring the risk, causing Plaintiff harm.  Therefore,

Plaintiff fails to state an Eighth Amendment claim. Plaintiff shall be granted leave to amend the Complaint to address the deficiencies in his Eighth Amendment claim.

### F.     Damages for Emotional Distress

Plaintiff has requested special damages in the amount of $250,000.00 for the intentional infliction of emotional and spiritual distress. Plaintiff is advised that the Prison Litigation Reform Act provides that "[n]o Federal civil action may be brought by a prisoner confined in jail, prison, or other correctional facility, for mental and emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). The physical injury "need not be significant but must be more than *de minimis*." Oliver v. Keller, 289 F.3d 623, 627 (9th Cir. 2002) ) (back and leg pain and canker sore *de minimis*); see also Pierce v. County of orange, 526 F.3d 1211, 1211-13 (bladder infections and bed sores, which pose significant pain and health risks to paraplegics such as the plaintiff, were not *de minimis*). The physical injury requirement applies only to claims for mental or emotional injuries and does not bar claims for compensatory, nominal, or punitive damages. Id. at 630. Therefore, Plaintiff is not entitled to monetary damages in this case for emotional distress unless he also shows a physical injury.

### G.     State Law Claims

Plaintiff brings claims for negligence, intentional infliction of emotional distress, and violations of the CDCR's Department Operations Manual, Title 15 regulations, and the California state constitution. These are state law claims. Plaintiff is informed that violation of state tort law, state regulations, rules and policies of the CDCR, or other state law is not sufficient to state a claim for relief under § 1983. Section 1983 does not provide a cause of action for violations of state law. See Galen v. Cnty. of Los Angeles, 477 F.3d 652, 662 (9th Cir. 2007). To state a claim under § 1983, there must be a deprivation of federal constitutional or statutory rights. See Paul v. Davis, 424 U.S. 693 (1976); also see Buckley v. City of Redding, 66 F.3d 188, 190 (9th Cir. 1995); Gonzaga University v. Doe, 536 U.S. 273, 279 (2002). Although the court may exercise supplemental jurisdiction over state law claims, Plaintiff must first have a cognizable claim for relief under federal law. See 28 U.S.C. § 1367. In this instance, the Court

fails to find any cognizable federal claims in the Complaint.  Therefore, Plaintiff's state claims fail.

"California's Government Claims Act requires that a tort claim against a [state] public entity or its employees for money or damages be presented to the [Department of General Services][2]  no more than six months after the cause of action accrues."  Lopez v. Cate, No. 1:10-cv-01773-AWI, 2015 WL 1293450, at *13 (E.D. Cal. 2015) (citing Cal. Gov't Code §§ 905.2, 910, 911.2, 945.4, 950-950.2).  "Timely claim presentation is not merely a procedural requirement, but is . . . a condition precedent to plaintiff's maintaining an action against defendant and thus an element of the plaintiff's cause of action."  Id. (internal quotation marks and citations omitted).  The "obligation to comply with the Government Claims Act" is independent of the obligation to exhaust administrative remedies pursuant to the Prison Litigation Reform Act. McCoy v. Torres, No. 119CV01023NONEJLTPC, 2020 WL 5257842, at *2 (E.D. Cal. Sept. 3, 2020), report and recommendation adopted, No. 119CV01023NONEJLTPC, 2021 WL 111748 (E.D. Cal. Jan. 12, 2021) (citing McPherson v. Alamo, No. 3:15-cv-03145-EMC, 2016 WL 7157634, at *6 (N.D. Cal. 2016) (citing Parthemore v. Col, 221 Cal. App. 4th 1372, 1376 (2013)).

Plaintiff submits documentary evidence that he filed a claim with the California Department of General Services on May 19, 2020, approximately a month before he filed the Complaint for this case.  (Complaint, ECF No. 1, Exh. B.)  This exhibit -- a copy of Plaintiff's claim -- is insufficient to show compliance with California's Government Claims Act.  See Cardenas v. Cty. of Tehama, No. 218CV03021TLNDMC, 2020 WL 4475188, at *10 (E.D. Cal. Aug. 4, 2020).

---

[2] The Department of General Services was formerly the Victim Compensation and Government Claims Board.  McCoy v. Torres, No. 119CV01023NONEJLTPC, 2020 WL 5257842, at *2 (E.D. Cal. Sept. 3, 2020), report and recommendation adopted, No. 119CV01023NONEJLTPC, 2021 WL 111748 (E.D. Cal. Jan. 12, 2021).

California's Government Claims Act requires that a claim against the State[3] or its employees "relating to a cause of action for death or for injury to person" be presented to the Department of General Services' Government Claims Program no more than six months after the cause of action accrues. Cal. Gov't Code §§ 905.2, 910, 911.2, 945.4, 950-950.2. Presentation of a written claim, *and action on or rejection of the claim*, are conditions precedent to suit. State v. Superior Court of Kings County (Bodde), 32 Cal.4th 1234, 1245 (Cal. 2004) (*emphasis added*); Mangold v. California Pub. Utils. Comm'n, 67 F.3d 1470, 1477 (9th Cir. 1995). To state a tort claim against a public entity or employee, a plaintiff must allege compliance with the Government Claims Act. Bodde, 32 Cal.4th at 1245; Mangold, 67 F.3d at 1477; Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621, 627 (9th Cir. 1988). Plaintiff has not done so and therefore he fails to state any state law claims.

**H.     Policy**

Plaintiff alleges that defendant Kranz instituted a policy that denied Plaintiff's right under DOM § 54080.14. Plaintiff has not identified this policy or alleged how the policy denied his rights. While the creation or enforcement of, or acquiescence in, an unconstitutional policy, as alleged here, may support a claim, the policy must have been the moving force behind the violation. Starr v. Baca, 652 F.3d 1202, 1205 (9th Cir. 2011); Jeffers v. Gomez, 267 F.3d 895, 914-15 (9th Cir. 2001); Redman v. County of San Diego, 942 F.2d 1435, 1446-47 (9th Cir. 1991). Without additional alleged facts the court cannot find that Plaintiff states a cognizable claim pertaining to a policy. Plaintiff shall be granted leave to amend the Complaint to add further alleged facts to this claim.

**I.     Request for Appointment of Counsel**

Plaintiff requests appointment of counsel. Plaintiff does not have a constitutional right to appointed counsel in this action, Rand v. Rowland, 113 F.3d 1520, 1525 (9th Cir. 1997), and

---

[3] "'State' means the State and any office, officer, department, division, bureau, board, commission or agency of the State claims against which are paid by warrants drawn by the Controller." Cal. Gov't Code § 900.6.

the Court cannot require an attorney to represent Plaintiff pursuant to 28 U.S.C. § 1915(e)(1). Mallard v. United States District Court for the Southern District of Iowa, 490 U.S. 296, 298 (1989). However, in certain exceptional circumstances the Court may request the voluntary assistance of counsel pursuant to section 1915(e)(1). Rand, 113 F.3d at 1525.

Without a reasonable method of securing and compensating counsel, the Court will seek volunteer counsel only in the most serious and exceptional cases. In determining whether "exceptional circumstances exist, the district court must evaluate both the likelihood of success of the merits [and] the ability of the [plaintiff] to articulate his claims *pro se* in light of the complexity of the legal issues involved." Id. (internal quotation marks and citations omitted).

In the present case, the court does not find the required exceptional circumstances. At this early stage in the proceedings the court cannot make a determination that plaintiff is likely to succeed on the merits. Plaintiff's Complaint is presently being screened by the court. Until the Complaint is screened and the court finds that Plaintiff states cognizable claims, service of process shall not be initiated upon the Defendants. Plaintiff's Free Exercise claims, RLUIPA claims, and Eighth Amendment claims are not complex. Moreover, based on a review of the record in this case the court finds that Plaintiff can adequately articulate his claims. Therefore, Plaintiff's motion shall be denied without prejudice to renewal of the motion at a later stage of the proceedings.

## V.     CONCLUSION

For the reasons set forth above, the court finds that Plaintiff fails to state any cognizable claims in the Complaint against any of the individual Defendants. Under Rule 15(a) of the Federal Rules of Civil Procedure, "[t]he court should freely give leave to amend when justice so requires." Plaintiff shall be granted leave file a First Amended Complaint within thirty days. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).

The amended complaint should be brief, Fed. R. Civ. P. 8(a), but must state what each named defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights. Iqbal, 556 U.S. at 678; Jones, 297 F.3d. at 934. Plaintiff must set forth "sufficient factual matter . . . to 'state a claim that is plausible on its face.'" Iqbal at 678 (quoting Twombly, 550 U.S. at

555). There is no *respondeat superior* liability, and each defendant is only liable for his or her own misconduct. Iqbal, 556 U.S. at 677. Plaintiff must demonstrate that each defendant *personally* participated in the deprivation of his rights. Jones, 297 F.3d at 934 (emphasis added). Plaintiff should note that although he has been given the opportunity to amend, it is not for the purpose of adding new defendants for unrelated issues. Plaintiff should also note that he has not been granted leave to add allegations of events occurring after the initiation of this suit on June 20, 2020.

Plaintiff is advised that an amended complaint supersedes the original complaint, Lacey v. Maricopa County, 693 F.3d 896, 907 n.1 (9th Cir. 2012), and it must be complete in itself without reference to the prior or superseded pleading. Local Rule 220. Once an amended complaint is filed, the original complaint no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. The amended complaint should be clearly and boldly titled "First Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury.

Accordingly, **IT IS HEREBY ORDERED** that:

1. Based on the foregoing, the court finds that Plaintiff fails to state any cognizable claims in the Complaint against any of the Defendants upon which relief may be granted under § 1983;
2. Plaintiff's request for appointment of counsel is denied without prejudice;
3. Plaintiff's Complaint is dismissed for failure to state a claim, with leave to amend within **thirty (30) days** from the date of service of this order;
4. The Clerk's Office shall send Plaintiff a civil rights complaint form;
5. Plaintiff shall caption the amended complaint "First Amended Complaint" and refer to the case number 1:20-cv-00892-NONE-GSA-PC; and
6. Plaintiff's failure to comply with this order shall result in a recommendation that this case be dismissed.

IT IS SO ORDERED.

Dated:  **September 15, 2021**                    **/s/ Gary S. Austin**
                                                                              UNITED STATES MAGISTRATE JUDGE