UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CORY JAMES WHITE,<br><br>              Plaintiff,<br><br>       vs.<br><br>KRANTZ, et al.,<br><br>              Defendants. | **1:20-cv-00892-ADA-GSA-PC**<br><br>**FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS CASE BE DISMISSED, WITH PREJUDICE, FOR FAILURE TO STATE A CLAIM**<br><br>**(ECF No. 16.)**<br><br>**OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN DAYS** |

## I.      BACKGROUND

Cory James White ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff filed the Complaint commencing this action on June 29, 2020.  (ECF No. 1.)  On September 16, 2021, the Court dismissed the Complaint for failure to state a claim, with leave to amend.  (ECF No. 15.)  On October 12, 2021, Plaintiff filed the First Amended Complaint, which is now before the court for screening.  (ECF No. 16.)  28 U.S.C. § 1915.

1

## II.    SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences."  Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).  To state a viable claim, Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).  While factual allegations are accepted as true, legal conclusions are not.  Id.  The mere possibility of misconduct falls short of meeting this plausibility standard.  Id.

## III.    SUMMARY OF FIRST AMENDED COMPLAINT

Plaintiff is presently incarcerated at California State Prison-Los Angeles County in Lancaster, California.  The events at issue in the First Amended Complaint allegedly occurred at Kern Valley State Prison (KVSP) in Delano, California, when Plaintiff was incarcerated there in the custody of the California Department of Corrections and Rehabilitation (CDCR).  Plaintiff names as defendants Ron Kranz (Chaplain), Maurice Howard (Chaplain), Randy Lindsey

///

(Community Resource Manager), and Paul Gonzales (Community Resource Manager) (collectively, "Defendants").

A summary of Plaintiff's allegations follows:

**<u>Claim I:</u>**

Plaintiff alleges that he sincerely adheres to the Jewish faith.  He arrived at KVSP on May 31, 2018, from Centinela State Prison with preapproval to receive Kosher Diet Program (KDP) meals.  On June 1, 2018, Plaintiff commenced a hunger strike because staff would not provide him KDP meals until his name was added to the approved KDP list at KVSP.  Plaintiff submitted several requests but heard nothing until June 11, 2018.  Defendant Ron Krantz denied Plaintiff's request for kosher meals because of some past infractions.  Defendant Krantz was MISTAKEN (emphasis added), denying Plaintiff's due process rights.  Defendant Krantz placed a substantial burden upon Plaintiff to maintain his religious beliefs without kosher meals and no commissary, for Plaintiff is indigent and owes restitution.  Plaintiff was forced to consume General Population meals which are treif (torn, not kosher), thus placing Plaintiff in a constant state of uncleanliness and sin for not keeping Kashrut (kosher dietary laws).  Plaintiff was denied kosher meals for approximately 50 days.

**<u>Claim II:</u>**

Yom Kippur occurred on September 19, 2018 and as per CDCR policy, Plaintiff submitted a request to receive sack lunches for the end of the fast day.  There are six recognized fast days within Judaism that CDCR recognizes and allows Jews to receive sack lunches in lieu of the standard meals.  On September 17, 2018, Defendant Ron Krantz denied Plaintiff's request for end of the day sack lunches per policy at § 54080.14 of the Department Operations Manual.  Krantz stated that the institution does not do that.  KVSP does not retain a Rabbi and it is up to any practicing Jew to carry his own mantle when it comes to religious observances, but up to CDCR and its subsidiaries to provide three meals a day.  Plaintiff is an indigent prisoner and had fasted since the eve of September 18, 2018 and did not pick up any meals, so at the end of the fast day, Plaintiff was unable to eat, for he had no food items, because Defendant Krantz failed to follow policy and denied Plaintiff due process.

**Claim III:**

As per CDCR policy at § 54080.14 of the DOM, Plaintiff submitted a request to receive religious sack lunches for the end of 10th of Tevet, which occurred on December 18, 2018, but Plaintiff received no response.  On November 25, 2018, Plaintiff submitted a request to the Religious Review Committee (RRC), specifically writing on the envelope Defendants Ron Krantz, Maurice Howard, Paul Gonzales, and Randy Lindsey's names.  Defendants Krantz and Howard are chairs of the RRC.  None of the Defendants responded and by acquiescence denied Plaintiff sack lunches as per CDCR policy, thus causing Plaintiff to go hungry because of his indigence.  Defendants' actions had no legitimate penological interest.

**Claim IV:**

The fast of Esther (Purim) occurred on March 20, 2019,  As per CDCR Policy, Plaintiff submitted a request to the RRC requesting sack lunches for the end of a fast day.  Defendants Ron Krantz, Maurice Howard, Paul Gonzales, and Randy Lindsey sat on the RRC panel.  Plaintiff received no response from the RRC and acquiescence tends to convey this as a denial from the RRC and Defendants as a whole.  Defendants denied Plaintiff due process and denied him the right to practice his religion.  Defendants' actions had no legitimate penological interest.

**Claim V:**

As per CDCR policy (DOM § 54080.14), Plaintiff submitted a request to receive sack lunches for the end of the fast day on July 7, 2019 for the Fast of Temmuz 17th, which was to occur on July 21, 2019.  Defendant Krantz responded on July 12, 2019 stating that the fast was commemorative in nature rather than obligatory and would not provide a sack lunch as per policy.  Ron Krantz is not Jewish and his statement was not given from a place of knowledge, nor was it true.  Krantz's actions caused Plaintiff to go hungry and question the feasibility of practicing his religious beliefs which housed at KVSP.  Krantz's actions denied Plaintiff due process and the practice of religious tenets.

**Claim VI:**

On July 22, 2019 and August 1, 2019, Plaintiff sent Defendant Krantz a request to receive religious sack lunches for the fast of Tisha Ba'v, which occurred on August 11, 2019, but Krantz

failed to respond.  By the laws of acquiescence and past denials, Plaintiff took Defendant's nonresponse as a denial.  Plaintiff went hungry at the end of the fast day because there were no lunches provided and Plaintiff had no commissary due to his indigence.  Krantz's actions denied Plaintiff due process and prevented him from practicing his religious beliefs in the proper state of mind.

**Relief:**

Plaintiff seeks compensatory and punitive damages, litigation fees and costs, and the appointment of counsel.

## IV. PLAINTIFF'S CLAIMS

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

"[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'"  Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006).  "To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress."  Id.

To state a claim under § 1983, a plaintiff must allege that (1) the defendant acted under color of state law and (2) the defendant deprived him or her of rights secured by the Constitution or federal law.  Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. Cnty. of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law").  A person deprives another of a constitutional right, "within the meaning of § 1983,

'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)).  "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743).  This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

A.    **Personal Participation – Defendants Howard, Lindsey, and Gonzales (Claims 3 and 4); Defendant Krantz (Claims 3,4 &6)**

Under section 1983, Plaintiff must demonstrate that each defendant *personally* participated in the deprivation of his rights.  Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002) (emphasis added).  Plaintiff must demonstrate that each defendant, through his or her own individual actions, violated Plaintiff's constitutional rights.  Iqbal, 556 U.S. at 676-77.

In the Complaint, Plaintiff fails to allege facts in Claims 3, 4 and 6 showing that Defendants Krantz,  Howard, Lindsey, or Gonzales personally acted against him.  In Claim # 3, Plaintiff alleges that he submitted a request to receive religious sack lunches for the end of the 10th of Tevet, but that he received no response. Specifically, on 11/25/2018 he submitted a request to the RRC where Krantz and Howard are designees, and Gonzales and Lindsey are chairs, but that none of the defendants responded.    Plaintiff concludes that these Defendants denied Plaintiff's request for sack lunches "by acquiescence" and by doing so caused Plaintiff to go hungry.  In Claim #4, Plaintiff again claims that he made requests to the RRC for sack lunches for the end of the fast day occurring on 3/20/2019.  Again, as in Claim #3, he claims he received no response from the above four defendants and thus this acquiescence tends to convey this as a denial from the RRC and the defendants as a whole. Finally  in Claim #6, wherein only Defendant Krantz is named, Plaintiff states that he sent Krantz a request to receive religious sack lunches

for the fast of Tisha Vav, but Krantz failed to respond and because of this acquiescence Plaintiff took this to be a denial.

The mere fact that Defendants failed to respond, without more, does not show their personal participation in denying Plaintiff's requests. Plaintiff's claims here are no more than purely conjectural. Moreover, Plaintiff may not attribute liability to a group of defendants, but must "set forth specific facts as to each individual defendant's" deprivation of his rights. Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988); see also Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). In the Court's previous screening order, filed 9/16/21, the court instructed Plaintiff that he "must first name the individual defendant(s) who denied him a Kosher diet, explain exactly [what] that particular defendant did, or did not do, regarding the requested Kosher diet, and why Plaintiff was denied a Kohser diet…More specificity is required here…Plaintiff must set forth detailed facts supporting each incident, and detail what each defendant did or did not do". Plaintiff has clearly not done so in his 1AC. This lack of factual specificity and detail on Plaintiff's part is fatal to Plaintiff's claims against Defendants Krantz, Howard, Lindsey and Gonzales.

Therefore, Plaintiff fails to state any claim under § 1983 against Defendants Krantz, Howard, Lindsey, or Gonzales in Claims 3, 4 and 6.

### B.    RLUIPA – Right to Practice Religion

The Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") provides:

> No government shall impose a substantial burden on the religious exercise[1] of a person residing in or confined to an institution . . ., even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person:
>
> (1)    is in furtherance of a compelling government interest; and

---

[1] "Congress defined 'religious exercise' to include 'any exercise of religion, whether or not compelled by, or central to, a system of religious belief.'" Holt v. Hobbs, 135 S.Ct. 853, 860, 190 L.Ed.2d 747 (2015). (quoting § 2000cc-5(7)(A)). In fact, RLUIPA bars inquiry into whether a particular belief or practice is 'central' to a prisoner's religion." Cutter v. Wilkinson, 544 U.S. 709, 725 n.13, 125 S.Ct. 2113, 161 L.Ed. 1020 (2005) (overruling Establishment Clause to RLUIPA).

(2)     is the least restrictive means of furthering that compelling
government interest.

42 U.S.C. § 2000cc-1.

"RLUIPA is to be construed broadly in favor of protecting an inmate's right to exercise his religious beliefs." Warsoldier v. Woodford, 418 F.3d 989, 995 (9th Cir. 2005). "RLUIPA disallows policies that impose 'a substantial burden on . . . religious exercise' unless the burden 'furthers "a compelling governmental interest," and does so by "the least restrictive means."'" Alvarez v. Hill, 518 F.3d 1152 (9th Cir. 2008) (quoting id. at 994 quoting 42 U.S.C. § 2000cc–1(a)). A "substantial burden" is one that imposes a significantly great restriction or onus on religious exercise. San Jose Christian College v. City of Morgan Hill, 360 F.3d 1024, 1034–35 (9th Cir. 2004). The Supreme Court has found a substantial burden "where the state denies an important benefit because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs." Warsoldier, 418 F.3d at 995 (quoting Thomas v. Review Bd. of the Ind. Employment Sec. Div., 450 U.S. 707, 717–18 (1981)). In any RLUIPA claim, one must first identify the "religious exercise" allegedly impinged upon, and then must ask whether the prison regulation at issue "substantially burdens" that religious exercise. Greene v. Solano County Jail, 513 F.3d 982, 987 (9th Cir. 2008). "Courts are expected to apply RLUIPA's standard with due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." Hartmann v. California Dep't of Corr. & Rehab., 707 F.3d 1114, 1124-25 (9th Cir. 2013) (citing Cutter v. Wilkinson, 544 U.S. 709, 723, 125 S.Ct. 2325 (2003)) (internal quotation marks omitted).

Money damages are not available under RLUIPA against the state or state officials sued in their official capacities, Sossamon v. Texas, 563 U.S. 277, 279, 131 S.Ct. 1651, 1655 (2011), and RLUIPA does not contemplate liability of government employees in their **individual** capacity. Wood v. Yordy, 753 F.3d 899, 904 (9th Cir. 2014). Thus, a RLUIPA claim may proceed only for declaratory or injunctive relief against defendants acting within their OFFICIAL

capacities.  In Plaintiff's 1AC, each of his six claims are asserted against the defendants only in their INDIVIDUAL capacities, not official capacities, and only for money damages, both of these render a RLUIPA claim here unavailable.

Plaintiff has requested as relief monetary damages, which are not available in a RLUIPA claim, and importantly Plaintiff has not requested injunctive relief, and even if he had he would not be entitled to injunctive relief based on the events at KVSP as he has now been transferred to another prison facility, specifically, California State Prison, Los Angeles located in Lancaster, California (see, Plaintiff's 1AC).  Moreover, claims for non-monetary relief brought under 42 U.S.C. § 1983 are moot if the prisoner-plaintiff is no longer subject to the alleged illegal conduct.  Jonquil Thomas-Weisner v. Gipson, No. 19-cv-01999-JAH-BGS) 2022 U.S.Dist.LEXIS 106395, at *18-19 (S.D.Cal. June 14, 2022) (citing Wiggins v. Rushen, 760 F.2d 1009, 1010-11 (9th Cir. 1985) ("In these circumstances, where the complainant was no longer subject to the allegedly illegal activity, the complaint for an injunction became moot.").  In particular, injunctive relief claims should be dismissed when a prisoner is transferred to another prison that is not the subject of the underlying claim.  Id. (citing see Johnson v. Moore, 948 F.2d 517, 519 (9th Cir. 1991); Dilley v Gunn, 64 F.3d 1365, 1369 (9th Cir. 1995) (prisoner-plaintiffs must demonstrate a "reasonable expectation" that they will be transferred back in order to receive injunctive relief.")  Thus, because Plaintiff is no longer subject to the alleged illegal conduct which occurred while Plaintiff was incarcerated at KVSP,  and additionally has not demonstrated a "reasonable expectation" that he will be transferred back to KVSP, this renders any claim for injunctive relief moot.  Therefore, it is recommended that Plaintiff's RLUIPA claim be dismissed for based on all the reasons stated above (ie., no individual capacity suits, damages not allowed, Plaintiff no longer housed at KVSP).

## C.    Due Process – Fourteenth Amendment

Plaintiff claims that his rights to due process were violated.  Procedural due process is not implicated by the facts of this case, and thus the Court construes the claim as a substantive due process claim. Foster v. Redenius, No. 06-CV-0792-BLW-MHW, 2009 WL

1212888, at *8–9 (E.D. Cal. May 4, 2009), report and recommendation adopted, No. 1:06-CV-792-BLW-MHW, 2009 WL 7327153 (E.D. Cal. June 11, 2009), aff'd sub nom. Foster v. Noyce, 420 F. App'x 720 (9th Cir. 2011).

The Supreme Court has instructed the federal courts that, whenever possible, they should analyze constitutional claims using an "explicit textual source of constitutional protection," such as the First Amendment, rather than using "the more generalized notion of 'substantive due process.'" Id. (quoting Graham, 490 U.S. at 395). Fundamentally, "where a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing a plaintiff's claims." Jonquil Thomas-Weisner, 2022 U.S.Dist.LEXIS 106395, at *7-8) (quoting see Pino v. Ladd, No. 1:13CV01593-DLB-PC, 2014 WL 1102721, at *3 (E.D. Cal. Mar. 2014) (citing Patel v. Penman, 103 F.3d 868, 874 (9th Cir. 1996)). Therefore, considering that Plaintiff alleged that Defendant Krantz's conduct hindered his full and safe participation of his religion due to his alleged participation in removing Plaintiff from his KDP diet and denying him sack lunches on Jewish Holy Days, under the Graham principle, Plaintiff's religion claim is more appropriately construed as a First Amendment claim than a Fourteenth Amendment substantive due process claim. Id. (citing see Pino, 2014 WL 1102721, at *3 (finding that Plaintiff did not have a Fourteenth Amendment claim since his claim regarding his religious practice was properly analyzed under the First Amendment)).

Accordingly, Plaintiff's Fourteenth Amendment due process claim should be dismissed.

### D.   Free Exercise of Religion – First Amendment Claim

The First Amendment is made applicable to state action by incorporation through the Fourteenth Amendment. Everson v. Bd. of Educ. of Ewing Twp., 330 U.S. 1, 8 (1947). In order to establish a free exercise violation, a prisoner must show that a defendant substantially burdened the practice of his religion without any justification reasonably related to legitimate penological interests. See Shakur v. Schriro, 514 F.3d 878, 883-84 (9th Cir. 2008); see, e.g., Bolds v. Cavazos, No. 14-15176, 599 Fed. Appx. 307 (9th Cir. March 20, 2015) (unpublished

memorandum disposition) (dismissing Free Exercise Clause claim because inmate failed to show that confiscation of television "substantially burdened" the practice of religion). "A substantial burden . . . place[s] more than an inconvenience on religious exercise; it must have a tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an adherent to modify his behavior and to violate his beliefs." Jones v. Williams, 791 F.3d 1023, 1031-32 (9th Cir. 2015). *De minimis* or minor-burdens on the free exercise of religion are not of a constitutional dimension, even if the belief upon which the exercise is based is sincerely held and rooted in religious belief. See e.g., Rapier v. Harris, 172 F.3d 999, 1006 n. 4 (7th Cir. 1999) (the unavailability of a non-pork tray for inmate at 3 meals out of 810 does not constitute more than a *de minimis* burden on inmate's free exercise of religion).

The "sincerity test," and not the centrality test, applies to prisoners' free-exercise claims. Penwell v. Holtgeerts, 386 F. App'x 665, 667 (9th Cir. 2010) (citing see Shakur, 514 F.3d at 884–85). Under the sincerity test, a prisoner's religious concern implicates the free exercise clause if it is (1) "sincerely held" and (2) "rooted in religious belief," rather than in secular philosophical concerns. Id. (citing Malik v. Brown, 16 F.3d 330, 333 (9th Cir. 1994) (quotations omitted); see also Shakur, 514 F.3d at 885 (adopting Malik's formulation of the sincerity test)).

To state a claim under the Free Exercise Clause, an inmate must plausibly allege that a prison official's actions (a) "substantially burden[ed]" the inmate's exercise of a sincerely held religious belief; and (b) did so in an unreasonable manner -- i.e., the official's actions were not "rationally related to legitimate penological interests." Id. (citing see O'Lone v. Estate of Shabazz, 482 U.S. 342, 348-50, 107 S. Ct. 2400, 96 L. Ed. 2d 282, (1987); Jones, 791 F.3d at 1033. A "[p]laintiff must allege conscious or intentional acts that burden his free exercise of religion." Id. (quoting Lewis v. Mitchell, 416 F. Supp. 2d 935, 944 (S.D. Cal. 2005) (holding negligence is insufficient to state a valid Section 1983 claim for the violation of free exercise rights); see also Hayes v. Idaho Corr. Ctr., 849 F.3d 1204, 1214 (9th Cir. 2017) (Bybee, J., concurring) ("[I]t is now beyond question that § 1983 requires proof of intentional, not merely negligent, acts depriving a party of his constitutional rights")). "Threadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u> (quoting <u>Iqbal</u>, 556 U.S. at 678.)

**<u>Judicial Notice</u>**

The Court takes judicial notice of Plaintiff's CDCR form 602 administrative appeals and KVSP's responses to the appeals, submitted by Plaintiff as Exhibits "H" through "M" to the original Complaint. (ECF No. 1. at 87-193, Exhs. H-M.) "Courts may only take judicial notice of adjudicative facts that are not subject to reasonable dispute." <u>United States v. Ritchie</u>, 342 F.3d 903, 908-09 (9th Cir. 2003) (citing Fed. R. Evid. 201(b)). "Facts are indisputable, and thus subject to judicial notice, only if they are either 'generally known' . . . or capable of accurate and ready determination by resort to sources whose accuracy cannot be questioned[.]" <u>Id.</u> at 909. The content of records and reports of administrative bodies are proper subjects for judicial notice under Rule 201(d). <u>Jimenez v. Domino's Pizza, Inc.</u>, 238 F.R.D. 241, 246 (C.D. Cal. 2006) (citing <u>Interstate Natural Gas Co. v. S. Cal. Gas Co.</u>, 209 F.2d 380, 385 (9th Cir. 1953)). A court may also take judicial notice of the contents of public records. <u>Id.</u> (citing <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 688 (9th Cir. 2001)). Documents pertaining to exhaustion of remedies through prison appeals are part of a state administrative proceeding and can be judicially noticed as public records. <u>Ritchie</u>, 342 F.3d at 909. Therefore, the court finds Plaintiff's CDCR form 602 administrative appeals and KVSP's responses to the appeals to be appropriate for judicial notice, and the Court takes judicial notice of these documents.

**<u>Claim #I</u>**

Plaintiff alleges in Claim #1 of the First Amended Complaint that Defendant Ron Krantz, Chaplain, denied his request for Kosher meals when Plaintiff first arrived at KVSP, for approximately 50 days. He alleges that he arrived at KVSP on May 31, 2018, from Centinela State Prison with preapproval to receive Kosher Diet Program (KDP) meals, but staff would not provide him KDP meals until his name was added to the approved KDP list at KVSP. Plaintiff submitted several requests to be added to the approved list, but Defendant Ron Krantz denied Plaintiff's requests because of some past infractions.

Plaintiff alleges that he sincerely adheres to the Jewish faith. Therefore, the denial of

Kosher meals for 50 days is undoubtedly a substantial burden on his practice of religion. Plaintiff alleges that he was forced to consume General Population meals which are treif (torn, not kosher), thus placing him in a constant state of uncleanliness and sin for not keeping Kashrut (kosher dietary laws). Moreover, Plaintiff alleges that he was indigent and could not afford to purchase foods as substitutions for the Kosher diet he was denied, giving him no ready alternatives.

However, Plaintiff fails to show that Defendant Krantz's actions were not rationally related to legitimate penological interests. First, Plaintiff alleges that Krantz denied him Kosher meals because of "some past infractions." Although Plaintiff does not explain the nature of the infractions in the First Amended Complaint, the prison's amended second-level response to Appeal log no. KVSP-0-18-02037 provides information, stating as follows:

> Your allegation that . . . you were denied a kosher diet upon arrival at KVSP due to malfeasance or dereliction of duty is false. Documentation from Centinela State Prison (CEN) shows that you were removed from the kosher diet program there. CDCR 128Bs dated July 7, 2017, July 10, 2017, July 11, 2017, July 12, 2017, and July 13, 2017 notified you that you would be removed for program violation. You were also issued a CDCR 3030C on August 31, 2017 signed by K. Phillips, CRM and Religious Review Committee (RRC) Chairperson Designee that you were removed. . .

> This was the information available to Chaplain Krantz when he received your request to participate in the kosher diet program here at KVSP on June 11, 2018. Per policy, Chaplain Krantz instructed you to reapply for the kosher diet program on June 11, 2018 since it had been over 6 months since you had received the 3030C indicating your removal. Chaplain Krantz sent you a 3030 and 3030A on June 11, 2018, along with instructions to return the request with any information you thought demonstrated your sincerity or explained your previous involvement.

> Chaplain Krantz received the 3030 and 3030A he sent you on July 13, 2018 and interviewed you on July 16, 2018. During the interview you notified

him you had appealed the decision at CEN to remove you from the kosher diet program and won.  You provided him with copies of the documentation at that time, not before.  Chaplain Krantz approved your request to participate in the kosher diet program on July 16, 2018 and notified Business Services that your name should be added to the kosher diet list immediately.

(ECF No. 1 at 99-100.)

Thus, Plaintiff was advised in the second-level response that Defendant Krantz was not malicious in denying Plaintiff kosher meals, but rather had relied on documentation from CEN that Plaintiff had been denied kosher meals at CEN because of a program violation.  Thus, Defendant Krantz's actions were rationally related to legitimate penological interests. "Penological interests are interests that relate to the treatment (including punishment, deterrence, rehabilitation, etc.) of persons convicted of crimes." Bull v. City & Cnty. of San Francisco, 595 F.3d 964, 996 (9th Cir. 2010) (quoting Benjamin v. Fraser, 264 F.3d 175, 187 n. 10 (2d Cir.2001)).  The fact that Krantz relied on outdated information does not support Plaintiff's claim that Krantz acted maliciously.  Although the information may have been outdated,  Plaintiff has nevertheless not demonstrated that Krantz knew it to be anything other than a MISTAKE, and even states so in Claim #1.   Once Krantz discovered that Plaintiff had won his appeal at CEN, Krantz acted to add Plaintiff's name to the kosher foods list immediately. Again, Plaintiff acknowledges that Defendant Krantz was "mistaken," and there are no facts showing that Kranz intentionally relied on information he knew was outdated.  Hayes v. Idaho Corr. Ctr., 849 F.3d 1204, 1214 (9th Cir. 2017) (Bybee, J., concurring) ("[I]t is now beyond question that § 1983 requires proof of intentional, not merely negligent, acts depriving a party of his constitutional rights")).  Plaintiff must assert more than negligence to state a valid 1983 claim for the violation of his Free Exercise rights…he must allege conscious or intentional acts that burden his free exercise of religion,  (see, Lewis v Mitchell 2005 US Dist Lexis 40814; Jonquil Thomas-Weisner v Gipson 2022 US Dist Lexis 106395; Gallagher v.  Shelton 587 F.3d 1063).

Therefore, Plaintiff fails to state a cognizable claim against Defendant Krantz for violation of his First Amendment rights to freely exercise his religion.

**Claims 2, 3, 4, 5 and 6 (de minimis impacts)**

Plaintiff claims that Defendants violated his First Amendment right to exercise his religious beliefs when Plaintiff's requests for Kosher meals were denied on the following five separate occasions, Sept 19, 2018 (Claim 2; Krantz only), Dec. 18, 2018 (Claim 3; all four defendants), March 20, 2019 (Claim 4; all four defendants), July 21, 2019 (Claim 5; Krantz only), and on Aug.11, 2019 (Claim 6; Krantz only).

Plaintiff considers the denials in these five claims to have placed a substantial burden on his practice of religion. However, being denied 5 non-consecutive days of meals does not constitute a constitutional violation of Plaintiff's Free Exercise rights. *De minimis* or minor-burdens on the free exercise of religion are not of a constitutional dimension, even if the belief upon which the exercise is based is sincerely held and rooted in religious belief. See e.g., Rapier v. Harris, 172 F.3d 999, 1006 n. 4 (7th Cir. 1999) (the unavailability of a non-pork tray for inmate at 3 meals out of 810 does not constitute more than a *de minimis* burden on inmate's free exercise of religion). To show that a First Amendment right to free exercise of religion has been violated, the practice must be more than an inconvenience, an isolated incident, or short-term occurrence (see, McDaniels v Stewart 2018 US Dist Lexis 218717; Freeman v Arpaio 125 F3d 732). Short term and sporadic intrusion is not enough. The court therefore finds that Plaintiff fails to state a free exercise claim against any of the Defendants for denying him sack lunches (meals) on the days relating to Claims 2 through 6. Importantly, if the recommendation stated above is adopted and Claims 3,4 and 6 are dismissed for failure to state a claim, then the impact of the denial of meals would only relate to two non consecutive days, Sept. 19, 2018 and July 21, 2019, thus greatly reducing the impact of the denials making them even more de minimis.

E. **Conditions of Confinement – Eighth Amendment Claim**

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of

confinement.  Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing Farmer v. Brennan, 511 U.S. 825, 847, 114 S.Ct. 1970 (1994) and Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392 (1981)) (quotation marks omitted).  While conditions of confinement may be, and often are, restrictive and harsh, they must not involve the wanton and unnecessary infliction of pain.  Morgan, 465 F.3d at 1045 (citing Rhodes, 452 U.S. at 347) (quotation marks omitted).  Thus, conditions which are devoid of legitimate penological purpose or contrary to evolving standards of decency that mark the progress of a maturing society violate the Eighth Amendment. Morgan, 465 F.3d at 1045 (quotation marks and citations omitted); Hope v. Pelzer, 536 U.S. 730, 737, 122 S.Ct. 2508 (2002); Rhodes, 452 U.S. at 346.  Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety, Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted), but not every injury that a prisoner sustains while in prison represents a constitutional violation, Morgan, 465 F.3d at 1045 (quotation marks omitted).

To maintain an Eighth Amendment claim, a prisoner must show that prison officials were deliberately indifferent to a substantial risk of harm to his health or safety.  E.g., Farmer, 511 U.S. at 847; Thomas v. Ponder, 611 F.3d 1144, 1150-51 (9th Cir. 2010); Foster v. Runnels, 554 F.3d 807, 812-14 (9th Cir. 2009); Morgan, 465 F.3d at 1045; Johnson, 217 F.3d at 731; Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).  The deliberate indifference standard involves an objective and a subjective prong.  First, the alleged deprivation must be, in objective terms, "sufficiently serious . . . ."  Farmer, 511 U.S. at 834.  "[R]outine discomfort inherent in the prison setting" does not rise to the level of a constitutional violation.  Johnson, 217 F.3d at 731.  Rather, extreme deprivations are required to make out a conditions of confinement claim, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation.  Farmer, 511 U.S. at 834; Hudson v. McMillian, 503 U.S. 1, 9, 112 S.Ct. 995 (1992).  The circumstances, nature, and duration of the deprivations are critical in determining whether the conditions complained of are grave enough to form the basis of a viable Eighth Amendment claim.  Johnson, 217 F.3d at 731.  Second, the prison official must "know[] of and disregard[] an excessive risk to inmate health or safety . . . ."

Farmer, 511 U.S. at 837.  Thus, a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of harm and disregards that risk by failing to take reasonable measures to abate it.  Id. at 837-45.  Mere negligence on the part of the prison official is not sufficient to establish liability, but rather, the official's conduct must have been wanton.  Id. at 835; Frost, 152 F.3d at 1128.

Adequate food is a basic human need protected by the Eighth Amendment. See Keenan v. Hall, 83 F.3d 1083, 1091 (9th Cir.1996), amended, 135 F.3d 1318 (9th Cir. 1998).  However, the Eighth Amendment requires only that prisoners receive food that is adequate to maintain health.  See LeMaire v. Maass, 12 F.3d 1444, 1456 (9th Cir. 1993).  "Some conditions of confinement may establish an Eighth Amendment violation "in combination" when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise -- for example, a low cell temperature at night combined with a failure to issue blankets." Wilson v. Seiter, 501 U.S. 294, 304, 115 L. Ed. 2d 271, 111 S. Ct. 2321 (1991). The circumstances, nature, and duration of a deprivation of these necessities must be considered in determining whether a constitutional violation has occurred. "The more basic the need, the shorter the time it can be withheld." Hoptowit v. Ray, 682 F.2d 1237, 1259 (9th Cir. 1982).

Plaintiff alleges that he was denied a Kosher diet for 50 days following his initial transfer to KVSP, and later on five additional non-consecutive single day occasions.  These acts against Plaintiff, without more, do not rise to the level of an Eighth Amendment violation.  Even though Plaintiff was denied Kosher meals for 50 days after his initial arrival at KVSP, and then later on five additional non consecutive days, he never claims in the 1AC that he was unable to eat meals served to the general population during that time—in fact, in Claim # 1 Plaintiff states that he was forced during the 50 day period to "consume the General Population meals…".

Simply put, Plaintiff has not described an extreme deprivation from the denial of Kosher meals.  The alleged depravation Plaintiff describes does not meet the first prong **objective** test of being sufficiently serious as Plaintiff was apparently allowed to consume general inmate meals, which in fact he states he did during his first 50 days at KVSP.  Moreover, there are no allegations

that Plaintiff lost weight or otherwise physically suffered from an inadequate diet.  Nor has Plaintiff satisfied the **subjective** prong of deliberate indifference because he fails to demonstrate that any Defendant subjectively knew about a substantial risk of serious harm to Plaintiff if he were denied Kosher foods or sack lunches.  Therefore, Plaintiff fails to state an Eighth Amendment claim.

### F.   CDCR Rules

Plaintiff brings claims for violation of the rules in CDCR's Department Operations Manual.  These are state law claims.  Plaintiff is informed that violation of state tort law, state regulations, rules and policies of the CDCR, or other state law is not sufficient to state a claim for relief under § 1983.  Section 1983 does not provide a cause of action for violations of state law.  See Galen, 477 F.3d at 662.  To state a claim under § 1983, there must be a deprivation of federal constitutional or statutory rights.  See Paul, 424 U.S. 693; also see Buckley, 66 F.3d at 190; Gonzaga University v. Doe, 536 U.S. 273, 279 (2002).  Although the court may exercise supplemental jurisdiction over state law claims, Plaintiff must first have a cognizable claim for relief under federal law.  See 28 U.S.C. § 1367.  In this instance, the Court fails to find any cognizable federal claims in the Complaint.  Therefore, Plaintiff's state claims fail.

"California's Government Claims Act requires that a tort claim against a [state] public entity or its employees for money or damages be presented to the [Department of General Services] [2] no more than six months after the cause of action accrues."  Lopez v. Cate, No. 1:10-cv-01773-AWI, 2015 WL 1293450, at *13 (E.D. Cal. 2015) (citing Cal. Gov't Code §§ 905.2, 910, 911.2, 945.4, 950-950.2).  Presentation of a written claim, *and action on or rejection of the claim*, are conditions precedent to suit.  State v. Superior Court of Kings County (Bodde), 32 Cal.4th 1234, 1245 (Cal. 2004) (*emphasis added*); Mangold v. California Pub. Utils. Comm'n, 67 F.3d 1470, 1477 (9th Cir. 1995).  "Timely claim presentation is not merely a procedural

---

[2] The Department of General Services was formerly the Victim Compensation and Government Claims Board.  McCoy v. Torres, No. 119CV01023NONEJLTPC, 2020 WL 5257842, at *2 (E.D. Cal. Sept. 3, 2020), report and recommendation adopted, No. 119CV01023NONEJLTPC, 2021 WL 111748 (E.D. Cal. Jan. 12, 2021).

requirement, but is . . . a condition precedent to plaintiff's maintaining an action against defendant and thus an element of the plaintiff's cause of action." Id. (internal quotation marks and citations omitted).  The "obligation to comply with the Government Claims Act" is independent of the obligation to exhaust administrative remedies pursuant to the Prison Litigation Reform Act. McCoy v. Torres, No. 119CV01023NONEJLTPC, 2020 WL 5257842, at *2 (E.D. Cal. Sept. 3, 2020), report and recommendation adopted, No. 119CV01023NONEJLTPC, 2021 WL 111748 (E.D. Cal. Jan. 12, 2021) (citing McPherson v. Alamo, No. 3:15-cv-03145-EMC, 2016 WL 7157634, at *6 (N.D. Cal. 2016) (citing Parthemore v. Col, 221 Cal. App. 4th 1372, 1376 (2013)).

To state a tort claim against a public entity or employee, a plaintiff must allege compliance with the Government Claims Act.  Bodde, 32 Cal.4th at 1245; Mangold, 67 F.3d at 1477; Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621, 627 (9th Cir. 1988).  Plaintiff has not done so and therefore he fails to state any state law claims.

## G.    Request for Appointment of Counsel

Plaintiff requests appointment of counsel.  Plaintiff does not have a constitutional right to appointed counsel in this action, Rand v. Rowland, 113 F.3d 1520, 1525 (9th Cir. 1997), and the Court cannot require an attorney to represent Plaintiff pursuant to 28 U.S.C. § 1915(e)(1). Mallard v. United States District Court for the Southern District of Iowa, 490 U.S. 296, 298

///

(1989).  However, in certain exceptional circumstances the Court may request the voluntary assistance of counsel pursuant to section 1915(e)(1).  Rand, 113 F.3d at 1525.

Without a reasonable method of securing and compensating counsel, the Court will seek volunteer counsel only in the most serious and exceptional cases.  In determining whether "exceptional circumstances exist, the district court must evaluate both the likelihood of success of the merits [and] the ability of the [plaintiff] to articulate his claims *pro se* in light of the complexity of the legal issues involved." Id. (internal quotation marks and citations omitted).

In the present case, the court does not find the required exceptional circumstances. Therefore, Plaintiff's motion must be denied.

## V.    CONCLUSION AND RECOMMENDATIONS

For the reasons set forth above, the court finds that Plaintiff fails to state any cognizable claims in the First Amended Complaint against any of the individual Defendants upon which relief may be granted.  Under Rule 15(a) of the Federal Rules of Civil Procedure, "[t]he court should freely give leave to amend when justice so requires."  However, a district court may deny leave to amend when amendment would be futile."  Hartmann v. CDCR, 707 F.3d 1114, 1130 (9th Cir. 2013).  The court finds that the deficiencies in Plaintiff's Complaint outlined above are not capable of being cured by amendment, and therefore further leave to amend should not be granted.  28 U.S.C. § 1915(e)(2)(B)(ii); Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).

Therefore, **IT IS HEREBY RECOMMENDED** that pursuant to 28 U.S.C. § 1915A and 28 U.S.C. § 1915(e):

1.      Plaintiff's motion for the appointment of counsel be denied;

2.      This case be dismissed, with prejudice, for Plaintiff's failure to state a claim; and

3.      The Clerk be directed to close this case.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **fourteen days** from the date of service of these Findings and Recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   __November 21, 2022__            _____/s/ Gary S. Austin_____
                                        UNITED STATES MAGISTRATE JUDGE

20